UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BLAIR C. WEBB,**

       **Plaintiff,**                      **CIVIL ACTION NO. 11-cv-12830**

       **v.**                               **DISTRICT JUDGE VICTORIA A. ROBERTS**

**CITY OF FLINT, DON URBAN,**     **MAGISTRATE JUDGE MONA K. MAJZOUB**
**TODD PILLSBURY, ANTHONY**
**MILLS, AND RODNEY WILLIAMS,**

       **Defendants.**
_____/

## REPORT AND RECOMMENDATION

       This is a *pro se* civil rights action filed by Plaintiff Blair C. Webb pursuant to 42 U.S.C. § 1983. Before the Court are Defendant Don Urban and Todd Pillsbury's Motions for Summary Judgment. (Docket nos. 94 and 95.) Plaintiff has not responded to Defendants' Motions. This action has been referred to the undersigned for all pretrial proceedings. (Docket no. 10.) The undersigned has reviewed the pleadings, dispenses with oral argument on the motions pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

       For the reasons that follow, the undersigned recommends that Defendant Urban's Motion for Summary Judgment (docket no. 94) be **GRANTED** and that Defendant Urban be dismissed from this matter. The undersigned also recommends that Defendant Pillsbury's Motion for Summary Judgment (docket no. 95) be **DENIED** with regard to Plaintiff's excessive force claim and **GRANTED** with regard to Plaintiff's remaining claims.

## II. REPORT

### A. Background

This case arises out of Plaintiff's July 29, 2008 encounter with police officers of the Flint Area Narcotics Group (FANG). Plaintiff initiated this civil rights matter *pro se* on June 30, 2011, against the City of Flint, Officers Don Urban and Todd Pillsbury, Investigator Anthony Mills, and Sergeant Rodney Williams. (*See* docket no. 1.) The Court dismissed the City of Flint from this action on August 7, 2012, for Plaintiff's failure to state a claim for which relief may be granted. (Docket no. 33.) In his Second Amended Complaint, filed with the assistance of counsel on January 25, 2013, Plaintiff sets forth claims of gross negligence, assault and battery, false arrest and imprisonment, violations of his constitutional rights under 42 U.S.C. § 1983, supervisory liability, conspiracy to violate his civil rights, and intentional infliction of emotional distress. (Docket no. 57.) On December 2, 2013 the parties stipulated to and the Court ordered the dismissal of Defendants Mills and Williams, as well as Plaintiff's state law claims of assault and battery and false imprisonment with prejudice. (Docket no. 71.) Defendant Officers Don Urban and Todd Pillsbury are the only remaining defendants.

On July 29, 2008, Defendants Urban and Pillsbury, along with other members of FANG, arrived at Plaintiff's residence to investigate an anonymous tip that Plaintiff was growing marijuana in his back yard. (Docket no. 94 at 11; docket no. 95 at 8.) Plaintiff alleges that Defendants and the other FANG members arrived at his residence in plain clothes and exited their unmarked cars with their guns drawn, so he ran toward the side of the house. (Docket no. 57 ¶¶ 11-12; docket no. 95-2 at 3.) Plaintiff alleges that four officers, one of whom was Defendant Pillsbury, followed him into his back yard, surrounded him, pointed their guns at him, and ordered him to put his hands up.

(Docket no. 57 ¶ 14; docket no. 95-2 at 3.) Plaintiff alleges that he put his hands up and then Defendant Pillsbury put his gun away and ordered Plaintiff to get down on the ground, but before he could do so, the officers slammed him to the ground, jumped on top of him, and started punching him. (Docket no. 95-2 at 3.) Plaintiff further alleges that when he turned around to tell the officers to stop punching him, Defendant Pillsbury punched Plaintiff in the mouth, jumped on Plaintiff's back with his knee in Plaintiff's back, and punched him on the face and back of the head several times. (Docket no. 57 ¶ 14; docket no. 95-2 at 3-4.) Plaintiff was then placed in handcuffs. (Docket no. 57 ¶ 16; docket no. 94-4 at 4.)

Plaintiff claims that Defendant Urban introduced himself to Plaintiff as the commanding officer at the scene right after Plaintiff "was beat up by [Defendant] Pillsbury." (Docket no. 94-5 at 14.) In his Second Amended Complaint, Plaintiff alleges that "Defendant Urban stood by and failed to intercede," presumably during Plaintiff's encounter with Defendant Pillsbury; in his June 12, 2014 deposition, Plaintiff testified that Defendant Urban "was behind the shed and didn't actually witness [Defendant] Pillsbury beat [him] up." (Docket no. 57 ¶ 15; docket no. 94-5 at 14.) According to the incident report, a search of the woods behind Plaintiff's residence yielded five marijuana plants; Plaintiff was processed and released at the scene. (Docket no. 94-3 at 3.) Plaintiff alleges that as a result of Defendants' conduct, he has suffered injuries and damages, including extreme pain and suffering, humiliation, embarrassment, shock, fear, outrage, severe emotional distress, mental injury, physical injury, permanent scarring, loss of liberty, and medical expenses. (Docket no. 57 ¶ 56.)

Procedurally, within the past year, Defendant Urban filed a Motion for Order to Show Cause Why Dr. Bruce Serven Should Not Be Held in Contempt of Court For Failing to Comply with

Record Subpoena and/or Compelling the Production of Records on June 12, 2014.[1] (Docket no. 87.) On September 11, 2014, Plaintiff's Motion to Withdraw, filed by Plaintiff's third retained attorney, J. Nicholas Bostic, was granted. (Docket no. 92.) Defendants Urban and Pillsbury then filed the instant Motions for Summary Judgment on September 26, 2014. (Docket nos. 94 and 95.) Also on September 26, 2014, Plaintiff filed a Motion for a Pro Bono Attorney, which was denied on October 7, 2014. (Docket nos. 98 and 99.) The Court's October 7, 2014 Order also directed Plaintiff to file responses to Defendants' Motions for Summary Judgment by October 17, 2014. (Docket no. 99 at 3.) Plaintiff has failed to respond to Defendants' Motions.

### B. Governing Law

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[1] The undersigned has addressed this motion in an Opinion and Order issued contemporaneously with this Report and Recommendation.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

### C.   Analysis

As a preliminary matter, Defendant Urban asserts that Plaintiff's claims are barred by the statute of limitations because Plaintiff's first and second amended complaints were filed more than three years after the date of the incident. (Docket no. 94 at 30-32.) The Sixth Circuit has held that Michigan's three-year statute of limitations for general personal injury claims found in Mich. Comp. Laws § 600.5805(10) is the applicable statute of limitations for § 1983 claims. *McCune v. Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988). As a general rule, any claims falling outside the three-year statute of limitations period are time-barred and subject to dismissal. Yet, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Here, Plaintiff, in his first and second

amended complaints, asserts claims arising from his July 29, 2008 encounter with FANG, which is the same occurrence set out in his original complaint. (*See* docket nos. 1, 11, and 57.) Defendant Urban's statute of limitations argument fails; the undersigned will address Defendants' Motions for Summary Judgment on the merits.

### 1. *Plaintiff's Gross Negligence Claims*

As Count I of his Second Amended Complaint, Plaintiff asserts a claim of gross negligence under Michigan law. (Docket no. 57 ¶¶ 24-28.) An officer or employee of a governmental agency is immune from tort liability while acting within the course of his employment, unless the officer's conduct amounts to gross negligence that is the proximate cause of the injury. Mich. Comp. Laws § 691.1407(2). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(8)(a). "Michigan has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254 (6th Cir. 2010) (internal quotations and citation omitted); *Kelly v. Fruit*, No. 05-73253, 2006 WL 3544107, at *10 (E.D. Mich. Dec. 8, 2006).

Plaintiff alleges that Defendants breached their "duty to perform their law enforcement duties competently" by "failing to properly investigate, providing false information, failing to provide exculpatory facts, failing to stop each other from knowingly providing false information and assaulting and battering [Plaintiff]." (Docket no. 57 ¶¶ 25-26.) Plaintiff, however, has failed to set forth any factual allegations or evidence regarding how Defendants Urban and Pillsbury provided false information or failed to properly investigate, provide exculpatory facts, or stop each other from knowingly providing false information. Essentially, Plaintiff's gross negligence claims are based

-6-

entirely upon his claims of assault and battery, which are intentional torts. Since claims involving elements of intentional torts can not be transformed into claims of gross negligence under Michigan law, summary judgment on Plaintiff's gross negligence claims should be granted.

### 2.     *Plaintiff's Section 1983 Claims*

Count IV of Plaintiff's Second Amended Complaint asserts violations of his Fourth and Fourteenth Amendment rights to be free from excessive force and to not be deprived of liberty or property without due process of law against Defendants Urban and Pillsbury under 42 U.S.C. § 1983. (Docket no. 57 ¶¶38-41.) To prevail on a § 1983 claim, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted). There is no dispute that Defendants were persons acting under color of state law. Thus, the only remaining issue under a § 1983 analysis is whether the Defendants deprived Plaintiff of a constitutional right.

#### a.     Excessive Force

The Fourth Amendment governs excessive force claims and requires the court to determine whether the amount of force used was objectively reasonable in light of the facts and circumstances confronting the officers' actions. *Graham v. Connor,* 490 U.S. 386, 395-96 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (citations and internal quotation marks omitted). In determining the reasonableness of the force used, the court

should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ingram v. City of Columbus,* 185 F.3d 579, 596 (6th Cir. 1999) (citation omitted). The court should be guided by the principle that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. In order to hold an officer liable for excessive force, a plaintiff must prove that the officer: "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

Defendants Pillsbury and Urban claim that they are entitled to the defense of qualified immunity. In determining whether a qualified immunity defense shields Defendants from individual civil liability, the court should consider whether "taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a violation of the Constitution." *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (citation omitted). "If . . . a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*. (citation and internal quotation marks omitted). *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (the court may exercise its discretion in deciding which of the two steps should be addressed first).

                        i.        Defendant Pillsbury

Plaintiff alleges that Defendant Pillsbury used excessive force in apprehending Plaintiff. Defendant Pillsbury argues that even if he "punched [Plaintiff] in the mouth and kneed [Plaintiff]

in the back," his actions were a reasonable use of force. (Docket no. 95 at 14.) In Plaintiff's Second Amended Complaint, he alleges that Defendant Pillsbury "punched [him] on the face and back of the head several times." (Docket no. 57 ¶ 14.) Later, in his June 12, 2014 deposition, Plaintiff testified that Defendant Pillsbury and three other officers surrounded Plaintiff with their guns drawn and told Plaintiff to put his hands up. (Docket no. 95-2 at 3.) Plaintiff testified that he put his hands up and then Defendant Pillsbury put his gun away and told Plaintiff to get down on the ground. (*Id.*) Plaintiff stated that as he was about to get on the ground, the officers slammed him down on the ground, jumped on top of him, and started punching him. (*Id.*) Plaintiff further testified that he turned around to tell the officers to stop punching him, and Defendant Pillsbury punched him in the mouth, kneed him in the back, jumped on his back, and started punching him. (*Id.* at 3-4.) Plaintiff explained that Defendant Pillsbury threw about four to five punches. (*Id.* at 4.)

Defendant Pillsbury, in his May 6, 2014 deposition, testified that after Plaintiff did not comply with verbal commands, with Plaintiff facing away from him, he kicked Plaintiff on his right thigh with his right foot. (Docket no. 94-4 at 4.) Defendant Pillsbury elaborated that once Plaintiff went to the ground, he was handcuffed by other officers. (*Id.*) Defendant Pillsbury further testified that after Plaintiff was handcuffed, he immediately started searching the woods for the alleged marijuana plants. (*Id.*) Plaintiff and Defendant's Pillsbury's conflicting accounts and deposition testimony raise factual disputes regarding the circumstances of Plaintiff's apprehension, particularly with regard to the amount of force used (i.e., how many times and where on Plaintiff's body Defendant Pillsbury punched Plaintiff, if at all) and to what extent Plaintiff resisted. Therefore, viewing the record in the light most favorable to Plaintiff, whether excessive force was used during the course of Plaintiff's apprehension presents a genuine issue of material fact for the jury, and

summary judgment in favor of Defendant Pillsbury on this claim is not appropriate. Accordingly, the Court should deny Defendant Pillsbury's request for qualified immunity.

ii.  Defendant Urban

Plaintiff asserts that Defendant Urban "stood by and failed to intercede," presumably during Plaintiff's encounter with Defendant Pillsbury. (Docket no. 57 ¶ 15.) An officer who fails to act to prevent the use of excessive force may be held liable when "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner,* 119 F.3d at 429 (citation omitted). Defendant Urban asserts that he was not present at the location behind the house when Plaintiff was apprehended. (Docket no. 94 at 11.) Also, as Defendant Urban points out, Plaintiff, in his June 12, 2014 deposition, admitted that Defendant Urban "was behind the shed and didn't actually witness Pillsbury beat [him] up" and later confirmed that Defendant Urban didn't see what happened among Plaintiff, Defendant Pillsbury, and the three unnamed officers. (Docket no. 94-5 at 14, 18.) Based on these accounts, it is undisputed that Defendant Urban did not observe or have reason to know that excessive force was allegedly being used and did not have the opportunity or the means to prevent it. Accordingly, Defendant Urban cannot be held liable for excessive force under the Fourth Amendment. Defendant Urban is entitled to qualified immunity, and his Motion for Summary Judgment should be granted on this issue.[2]

---

[2]Defendant Urban, by attaching excerpts of Plaintiff's June 12, 2014 deposition to his Motion, points to Plaintiff's testimony that Defendant Urban shoved Plaintiff after Plaintiff had been secured. Defendant Urban argues that even if Plaintiff's testimony were true, such conduct does not constitute excessive force. (Docket no. 94 at 22-25.) Plaintiff did not allege facts related to those events in his Second Amended Complaint; thus, there is no such excessive force claim before the Court.

2:11-cv-12830-VAR-MKM   Doc # 100   Filed 03/23/15   Pg 11 of 16   Pg ID 843

b.  Due Process

The Fourteenth Amendment protects against deprivations of life, liberty, or property. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981). Procedural due process claims apply to such deprivations that are "without due process of law." *Id.* The law requires that a plaintiff have an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations omitted). To support such a claim, a plaintiff must show that (1) he has a life, liberty, or property interest protected by the Constitution; (2) he was deprived of that interest by a state actor; and (3) he was not afforded timely and adequate legal process. *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir.2009) (citation omitted). Additionally, two types of substantive due process violations are recognized by the Sixth Circuit: "(1) official acts that are unreasonable and arbitrary and may not take place no matter what procedural protections accompany them, and (2) official conduct that shocks the conscience." *Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994) (citations and internal quotations omitted). "Actions meet this high standard if they are an 'egregious abuse of governmental power.'" *Kinross Charter Twp. v. Osborn*, No. 2:06–cv–245, 2007 WL 4284861, at *16 (W.D. Mich. Dec. 3, 2007) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir.1999)).

Plaintiff's Second Amended Complaint makes the general assertion that Defendants violated Plaintiff's "right to not be deprived of liberty or property without due process of law," but it does not contain factual assertions sufficient to support a procedural due process claim or to show that Defendants' alleged conduct "shocks the conscience" or was an "egregious abuse of governmental power." Therefore, the Court should grant Defendants' Motions for Summary Judgment with regard to Plaintiff's due process claims.

-11-

### 3. *Plaintiff's Supervisory Liability Claim*

Next, Plaintiff sets forth a claim of supervisory liability against Defendant Urban. (Docket no. 57 ¶¶ 42-46.) The doctrine of supervisory liability based on the right to control employees, or *respondeat superior,* does not apply in section 1983 actions to impute liability onto supervisory personnel. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978). A supervisor must either encourage the specific incident of misconduct or in some other way directly participate in it. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). A plaintiff must allege at least that a supervisor "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007) (citation omitted).

As discussed above, in his Second Amended Complaint, Plaintiff alleges that Defendant Urban stood by and failed to intercede, presumably while Defendant Pillsbury punched Plaintiff in the face and on the back of the head. (Docket no. 57 ¶¶ 14-15.) In his June 12, 2014 deposition, however, Plaintiff admitted that Defendant Urban "didn't actually witness [Defendant] Pillsbury beat [him] up" and later confirmed that Defendant Urban didn't see what happened among Plaintiff, Defendant Pillsbury, and the three unnamed officers. (Docket no. 94-5 at 14, 18.) Plaintiff's deposition testimony is consistent with Defendant Urban's assertion that "he was not present at the location behind the house when Plaintiff was apprehended." (Docket no. 94 at 11.) Thus, there is no factual dispute that Defendant Urban did not directly participate in the allegedly unconstitutional conduct surrounding Plaintiff's apprehension. Moreover, Plaintiff fails to show that Defendant Urban encouraged, implicitly authorized, approved, or knowingly acquiesced in the allegedly unconstitutional tactics used by Defendant Pillsbury and the unnamed officers to apprehend Plaintiff.

Accordingly, there is no genuine issue of material fact for trial on Plaintiff's supervisory liability claim, and Defendant Urban should be granted summary judgment.

### 4. *Plaintiff's Conspiracy Claims*

In Count VII of his Second Amended Complaint, Plaintiff alleges that Defendants conspired to deprive Plaintiff of his civil rights in violation of 42 U.S.C. § 1988. (Docket no. 57 ¶¶ 47-51.) The undersigned will assume that Plaintiff's citation to § 1988 is a typographical error and that he meant to cite 42 U.S.C. § 1985, which proscribes conspiracies to interfere with a person's civil rights. To state a claim under § 1985, the complaint must allege that the conspiracy was motivated by race or another protected class-based discriminatory animus. *Smith v. Thornburg,* 136 F.3d 1070, 1078 (6th Cir.1998). Plaintiff has not alleged any facts that warrant an inference of racial or discriminatory animus on the part of Defendants Urban or Pillsbury. Therefore, Defendants Urban and Pillsbury should be granted summary judgment on Plaintiff's § 1985 conspiracy claims.

It appears that Plaintiff intended to allege a civil conspiracy cause of action when he asserted that "[a]ll individual defendants conspired and committed acts in furtherance of a conspiracy to employ excessive force against the Plaintiff, thereby depriving Plaintiff of his civil right to liberty" under 42 U.S.C. § 1983. To allege a conspiracy under § 1983, a plaintiff must assert facts to show: (1) a single plan, (2) that the alleged co-conspirator shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy that deprived the plaintiff of his civil rights. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987) (citation omitted). Plaintiff has failed to set

forth any material facts that could support his claims for civil conspiracy, and his threadbare allegations are devoid of the specificity necessary to sustain a conspiracy claim. Furthermore, in his June 12, 2014 deposition, Plaintiff admits that he has no evidence that either Defendant Urban or Defendant Pillsbury were involved in any conspiracy against Plaintiff. (Docket no. 94-5 at 13.) Accordingly, the undersigned suggests that summary judgment in favor of Defendants is recommended for all claims of conspiracy raised by Plaintiff under 42 U.S.C. Sec. 1983.

### 5. *Plaintiff's Intentional Infliction of Emotional Distress Claims*

Finally, Plaintiff asserts a claim of intentional infliction of emotional distress against Defendants Urban and Pillsbury. (Docket no. 57 ¶¶ 52-54.) To establish a claim of intentional infliction of emotional distress, a plaintiff must show: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Lewis v. LeGrow*, 670 N.W.2d 675, 689 (Mich. Ct. App. 2003) (citations omitted). Outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Andrews v. Prudential Sec., Inc.*, 160 F.3d 304, 309 (6th Cir.1998) (citation omitted). Plaintiff asserts that "Defendants individually and collectively by their extreme and outrageous conduct intentionally and/or recklessly caused Plaintiff's severe emotional distress as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community" and that as a result of "Defendants' illegal, malicious, [and] intentional conduct," Plaintiff suffered extreme pain and suffering, humiliation, embarrassment, shock, fear, outrage, severe emotional distress, and mental injury, among other things. (Docket no. 57 ¶¶ 53-54, 56.)

Here, Plaintiff has only made a threadbare recital of the elements without providing any

factual support for his claim. In fact, the only factual allegations set forth by Plaintiff against Defendants, that "Defendant Pillsbury followed the Plaintiff into the back yard of Plaintiff's home, and punched [Plaintiff] on the face and back of the head several times" and "Defendant Urban stood by and failed to intercede" (*Id*. ¶¶ 14-15), do not rise to the level of extreme and outrageous conduct necessary to state a plausible claim for intentional infliction of emotional distress. Even if a jury were to find that Defendant Pillsbury used excessive force by punching and kicking Plaintiff in the course of apprehending him, it could not legitimately find that his actions were beyond all possible bounds of decency. "Unreasonable and inappropriate actions do not automatically equate to extreme and outrageous conduct as is required for a charge of intentional infliction of emotional distress." *Gill v. Kovach*, 729 F. Supp. 2d 925, 941-42 (N.D. Ohio 2010). Therefore, drawing on its judicial experience and common sense, the Court recommends dismissing Plaintiff's claims for intentional infliction of emotional distress.

**D.     Conclusion**

For the above-stated reasons, the undersigned recommends that the Court **GRANT** Defendant Urban's Motion for Summary Judgment (docket no. 94) and dismiss Defendant Urban from this matter. The undersigned also recommends that the Court **DENY** Defendant Pillsbury's Motion for Summary Judgment (docket no. 95) with regard to Plaintiff's excessive force claim and **GRANT** Defendant Pillsbury's Motion with regard to Plaintiff's remaining claims.

**III.     NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific

objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: March 23, 2015         s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Blair C. Webb and Counsel of Record on this date.

Dated: March 23, 2015          s/ Lisa C. Bartlett
                               Case Manager